UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Devora Shabtai                            20CV 10868
       Plaintiff

                                             AMENDED COMPLAINT
-against-                                JURY TRIAL REQUESTED

Goldie Shabtai, New York Guardianship Services, David Blau,
Jeremy Silbert, Mordechai Buls, Peter Strauss, Ken Barocas,
Morgan Russell, Daniel Miller
                             Defendants
-----------------------------------------------------------

Plaintiff, pro se, Devora Shabtai, as and for her complaint alleges as follows:

**Preliminary Statement**
This is an action for a civil rights violation. Defendants allege that plaintiff is incompetent and is not fit to be her mother's guardian. This is an action of malpractice, intentional infliction of emotional distress, defamation, slander, fraud, negligence and wrongful death.

**Jurisdiction and Venue**
Subject matter jurisdiction exists under U.S.C. SS 1331 because plaintiff's ADA claim raises a federal question, and that pursuant to 28 U.S.C. S 1367, supplemental jurisdiction exists over plaintiff Devora's claim because the claim forms part of the same case or controversy.

The above defendant Peter Strauss conspired with the above defendants to override the will by using the guardianship court. They removed me from my mother's medical decisions and prevented me from bringing her home which was her wishes. My mother was a strong woman who wheeled my father in the wheelchair twice a day to the synagogue and her health deteriorated in the rehab center. She begged "please bring me home, I don't want to die here alone", but my hands were tied. Her words still ring in my ears every day and will continue to haunt me for the rest of my life.

Venue is proper in this Court pursuant to 28 U.S.C S1391 (b), because defendant resides in this judicial district and a part of the events or omissions giving rise to the claims asserted herein arise from this judicial district.

**The Parties**
1. Plaintiff, Devora Shabtai, is an individual and resides at 2118 East 69th Street, Brooklyn, New York, 11234.
2. Defendant Goldie Shabtai is plaintiff's sister. She lives in Israel and has an apartment at Yochanan Beder 6/59, Ramat Gan Israel.
3. New York Guardian Services (NYGS) is a corporation located at 1204 Avenue U #2001, Brooklyn, New York 11229 and has a chief operating officer, David Blau.
4. Mordechai Buls is an attorney for New York Guardian Services located at 1317 Avenue J, 2nd Floor, Brooklyn, New York 11230.
5. David Blau is the executive director of New York Guardianship services.
6. Jeremy Silbert was the guardian acting on the behalf of the NYGS.

7. Peter Strauss is Goldie Shabtai's attorney. He is located at 488 Madison Avenue, Suite 1120, New York, NY 10022.
8. Daniel Miller is the court evaluator in the guardianship case. He is located at 365 Bridge Street #7Pro, Brooklyn, New York 11201.
9. Ken Barocas is a court appointed attorney for Miriam Shabtai aka Mary Shabtai, my mother. He is located at 26 Court Street, Suite 711, Brooklyn, New York 11242.

**Affirmation of Complaint**

I, Devora Shabtai am the pro se plaintiff and affirm the following:

1. I am a supervisor with the Department of Social Services for New York City. I have been working for the City of New York for the past eight years. I currently work from 8:00 am till 6:00 pm. The City has done an extensive background check on me and found me to be competent.
2. My sister and the above defendants have conspired to claim that I am incompetent, unfit and a criminal to be my mother's guardian in order to remove me from my mother's estate. Their actions led to my mother's death. My sister and all the above defendants used Judge Ottley to put a guardian in place which was not needed because I was capable of being my mother's guardian.
3. If I was incompetent, I would not be paying my father's bills, made improvement, made repairs and made arrangements with the city for property tax bill and water bill.
4. The above defendants conspired together and used a guardianship court Judge to attempt to override my father's will in order to gain control of my parent's estate.
5. My sister false accusations, (that I allegedly beat my mother and father, that I am incompetent, and other personal attacks) to draw attention away from the will, which states that she gets nothing. She attempted to submit a fake will to an attorney in Israel which states that she is the only child. My sister is using the same template my ex-husband used against me in a custody battle twenty years ago. My ex-husband is the same person who was disbarred for embezzlement and fraud from the bar of Pennsylvania. Instead of retaining back his license, he is now a security guard.
6. On September 9, 2020, defendant Peter Strauss asked me about a job with the Board of Education that dealt with my ex-husband trying to insinuate that I have a mental health condition.
7. While the guardianship court admitted that they erred in this case after my mother's death, the custody court twenty years ago did not reverse itself with a rubberstamp order with no trial from Lackawanna County in Pennsylvania and a pro-daddy psychiatrist Dr. Stephen Billick at the time.
8. On October 14, 2020, Judge Ottley herself called me at 4:15 pm, while I am at work, for an order to show cause filed by defendant NYGS and their attorney defendant Mordechai Buls having to do with my father's safe deposit boxes.
9. The above defendants have poisoned Judge Ottley against me by claiming that I am mentally ill and that I stole my father's "millions" from his safe deposit box when there is no documentation proving that he had millions. The judge called this a "serious situation" and suggested that the above defendants contact the DA's office. The bank would not allow me to record what was in the safe deposit box.
10. The contents of the safe deposit box was in my mother's black bag when she was admitted to the hospital and later on to the rehab center. She kept asking me to come and pick it up but since I was removed from the contact list I was not allowed to enter the rehab center. Now the

contents of the black bag is missing. The administrator of the rehab center stated that my sister came to pick up the contents of the black bag.
11. I watched in horror how Judge Ottley screamed, degraded and dismissed everything I filed, emailed, and wrote. I attempted to withdraw from the case, but t I was not able to do so, because a cross petition and motion for a guardian was in place that was filed by defendant Strauss with my ex-lawyer defendant Russell Morgan not opposing anything.
12. Defendant Ken Barocas has accused me in open court of forging my mother's signature on the power of attorney, while Judge Ottley claimed that no power of attorney was ever submitted to the court as an exhibit.
13. Upon information and belief, the above defendants in this case were working for my sister. They intended to find me incompetent and send my mother to Israel so that she will sign everything over to my sister. Why would defendant Ken Barocas, the court appointed attorney for my mother want my mother in Israel if monies were not promised to him?
14. I have lived with my parents most of my life and have taken care of them. My parents did not want me to purchase a house because they wanted me to be with them. However, they did not want my sister in their house ever since she was fourteen years old.
15. My mother was totally dependent upon me for years and waited for me at the door until I came home from work. She only asked for me, while she was in the rehab center, and since I was removed from the contact list, t I was never notified of my mother's medical changes and her wish to come home. And I intended to bring her home however I was not able to do so because of their actions.
16. I was denied total access to my mother. I took two covid test and it was negative, one on November 22, 2020 and the second one on December 13, 2020 and I was still denied access to my mother. I attempted to have a video chat with my mother and I was denied that.
17. In July 2020, Joseph Lu, my mother's social worker told me to come to come to the rehab center to take $1370 of cash on the Sabbath. I refused to pick up monies on the Sabbath and knew that my mother had a lot more monies that went missing.
18. In July 2020, Joseph Lu lied to me that he will be placing me back on the contact list. Why did Joseph Lu lie to me and who told him to lie to me?
19. On September 9, 2020, during the zoom meeting with Judge Ottley, defendant Buls stated that I should not be able to speak to my mother's doctors or get my mother's medical records. What was the guardian hiding?
20. On October 6, 2020, at 10:38 am, I was informed by the social worker, Joseph Lu, that my name was removed from the visiting list for my mother, however, my sister and the temporary guardian allowed to receive medical information.
21. My mother gave me the number of a social worker, Lillian Zhang and spelled it out for me so that I should call her and bring her home. I called Lillian Zhang many times, however she never returned my call because I was removed from the contact list. On December 23, 2020, three days before my mother's death, I called the administrator Christina Dilorenzo of the rehab center and I was told that I was removed from the contact list.
22. I never had a relationship with my sister, defendant Goldie Shabtai, because she masquerades as being legitimate when she is a criminal. She travelled the world with criminals for the past 25 years recruiting others for prostitution.
23. Suspiciously, On June 10, 2020, I was involved in a rear end car accident which resulted in a severe spinal injury and when I owned a car my tires were constantly slashed. For the past year, I received harassing phone calls in the middle of the night by her and her daughters.

24. Defendant Goldie Shabtai did not hide what she was doing for a living when my daughter, Sarah Levande, came to Israel with her cousin. My sister had two different guys at two different times paying hundreds of dollars for dinner with the family.
25. My sister is delusional, emotionally unstable, and may be bipolar like my mother. She believed her lawyer, defendant Peter Strauss, who is duping her into believing that the guardian is free.
26. Defendant Peter Strauss is charging my sister $600 an hour, and duping her into believing that she can override our father's will through the guardianship court.
27. On March 4, 2021. defendant Peter Strauss sent me a bill for $51,790.51. In that bill it states that he contacted the Brooklyn DA's office to have me arrested.
28. I was the only person that helped my parents through my entire life. I took the role of a guardian on behalf of my parents because my mother is bipolar and there was always a division in the household.
29. My sister, defendant Goldie Shabtai, skipped parental visits and when she came over a hundred times to the United States within the past 25 years, she only visited my parents a few times.
30. My sister was booted out of my parent's house 39 years ago (at the age of 14) because she was promiscuous and was expelled from two high schools. My father, out of guilt for kicking her out of the house, supported my sister, her two adult daughters, her son-in-law, and five grandchildren. He purchased apartments for my sister and her two daughters and gave them money.
31. My sister's son-in-law and her adult daughters are exerting undue influence on my sister to override our father's will and take everything for themselves and so are the rest of the family. My sister has alienated me from the family.
32. My father knew his two daughters very well and knew that my sister is travelling with criminals around the world. My father suspected that these criminals may want their money back.
33. My father went to Israel in April 2019 with the hope that my sister will take care of him during his stay in Israel. My sister saw him a few times while he was there. When he came back he removed my sister from the will.
34. I received a call from a neighbor in the building my father was staying in while in Israel that my father was alone and no one came to visit him. This means he was not visited by my sister, his grandchildren, my mother's siblings, or his own sibling
35. I was my parent's pride and joy; they always wanted me to be with them and help them. My father had pictures of me and my children in all his prayer books. My mother proudly displayed my engineering degree from Polytechnic University on a wooden plague in the Tel Aviv apartment which my sister trashed when she illegally rented my father's apartment a month after he left Israel.
36. My parent's relationship totally disintegrated when my sister was approximately nine or ten. At the age of ten, while in the fifth grade, defendant Goldie Shabtai would put on a tight pair of pants, after returning from Prospect Park yeshiva for girls, and go to Coney Island to ask old men for money. Lisa Greenwald, a classmate of my sister, confirmed this story.
37. My sister believes in her mind that she deserves all of my parent's estate since my parents supported her, her children, her grandchildren and her son-in-law for the past 30 years. My father upgraded her house from a 2 bedroom to a 4 bedroom apartment in an exclusive area in Israel to prevent her from coming back to Brooklyn. My parents since my sister was 14 years old never wanted her in their house again. She was promiscuous since the age of 9 and stole from my uncle cash register for a full year at the age of 15 while working for him and became pregnant out of wedlock at the age of 18.
38. One of my father's business partners warned me that my sister only came to New York to take over the estate of my parents and not to take care of my parents who were ill at the time. My

38. sister is picking up three rental incomes of over $5000 a month while she claimed to the courts that she has no monies to pay her attorney fees and my mom's grave of $19,000.
39. Whenever my mother was in Israel, her siblings never visited my mother (including my sister and my nieces) and my mother always came back to New York because she was alone in the apartment. Out of loneliness, my mother returned to New York because no one was there for her. Defendant Miller, the court evaluator forced the issue of having my mother's sibling served when they had nothing to do with my mother for many years.
40. Defendant Miller, the court appointed attorney for the guardianship case refused to believe anything I had to say. For example I told him that my father's home attendant brought him to a real estate to sell his property and he did not believe anything I stated.
41. Upon information and belief, the homecare agency my father used brought in Alissa Raineri and Jose Valdez, the prior tenants with the intent to buy the home from my father. Every time that my mother asked for the rent he said that my mother needs to be institutionalized because she was asking for the rent.
42. Defendant Daniel Miller, defendant Ken Barocas, and defendant Peter Strauss blamed me for my father's mistakes of paying half bills and having property taxes of $43,000 with $26,000 in interest which I had no control of at the time.
43. My father was thick head and stubborn and refused to listen to medical advice; he had a leaky heart valve which was never fixed. He also refused to listen that he was getting late fees, penalties and compound interest on paying half bills each month.
44. The New York Guardianship Services never questioned the property tax bills and couldn't care less that the city added an extra $12,000 after a payment agreement was put in place.
45. I am in negotiation with New York City and am trying to decrease the interest on the property tax bill. Defendant Peter Strauss has duped the court in believing that the property is in foreclosure.
46. On October 19, 2020, my father passed away and left a will giving me his properties and monies. The above defendants used the guardianship court to override my father's will.
47. Six months before my father's death, he went to Israel hoping that defendant Goldie Shabtai and her children would take care of him. He came back to New York depressed realizing that my sister is not who she claimed to be and disinherited her. A month after my father left Israel, my sister rented my father's apartment without his knowledge.
48. I hired defendant Russell Morgan for a guardianship case (100258/19) on behalf of my mother and he advised me to file in guardianship court even though my mother gave me the power of attorney over the Brooklyn house we I later found my father's will giving me ownership of this house as well as properties in Israel. Mr. Morgan ignored this information as well as the information I gave him about the power of attorney.
49. Defendant Morgan intentionally did not answer the notice of motion for a guardian knowing very well that if he will not oppose the motion a guardian will be appointed. Defendant Morgan kept me in the dark and did not show me, discuss with me, or answer any of the opposition papers. This includes the cross petition, answer, and notice of motion for a temporary guardian.
50. On February 6, 2020, defendant Morgan did not want me to sit right next to him because upon information and belief, he wanted to show the opposition that he was not on my side. Why would my own attorney refuse that I should sit right next to him?
51. Defendant Morgan allowed my sister to testify out of turn with the claim that she needed to return to Israel on February 18, 2020 because her job is " risk". My sister, her attorney defendant Strauss, and defendant Morgan my ex-attorney conspired and defrauded the court that she has a job when my sister defendant Goldie Shabtai has no job.

52. I never testified because defendant Morgan did not put me on the stand. He intentionally allowed my sister to testify out of turn without the court hearing my side.
53. Defendant Morgan did not respond to any of my emails or concerns. I received no confirmation of any of my over 60 emails and over 30 texts I sent him. He charged me for phone calls and emails, however he took no action.
54. On March 17, 2020, defendant New York Guardianship Services was placed against my wishes. Why would I pay defendant Morgan $2000 to $2500 a month to put a guardian on a property that was willed to me?
55. There was no hearing on March 17, 2020. Defendant Morgan lied that there was an oral arguments in front of Judge Ottley. Judge Ottley transferred the case to Judge Lawrence Knipel who basically rubberstamped an order for a temporary guardian on March 17, 2020 because there was no opposition. It appears that defendant Morgan was collaborating with my sister's attorney, defendant Peter Strauss, and agreed to a guardian. Defendant Morgan went against my wishes and went against his own client by not opposing the guardian. **Why would he go against his own client?**
56. **In fact on March 14, 2020, I emailed defendant Morgan and called him to tell him that I oppose any guardian to be in my place.**
57. My main goal in hiring Russell Morgan was to do a mental health warrant on my mother; I wanted her stabilized and returned home. I never wanted a guardian instead of me. My mother asked for me in the rehab center but since I was removed from the contact list and the above defendants never informed me of this. I found out that my mother wanted to come home to Brooklyn from my aunts and uncles who she spoke to on the phone.
58. Defendant Strauss defrauded the court in his notice of motion for a temporary guardian by claiming that I did not pay property taxes, water bills and other bills. Defendant Strauss defrauded the court by claiming that the house will go to foreclosure even though there is a payment agreement with the City of New York about the property taxes.
59. Defendant Strauss also claimed, in his notice of motion for a temporary guardian, that my sister is working for a Go-Be Marketing, a fictitious company, and came to New York on February 6, 2020 and left on February 18, 2020. This is false because my sister was calling me from New York numbers for a full year from a Richard Porzio, a man she was staying at from July 2019 through June 25, 2020. Richard Porzio name appears in defendant Strauss bill of $51,790.50.
60. Defendant Morgan was released as my attorney by the court on June 29, 2020. However, from March 17, 2020 to June 29, 2020, defendant Morgan refused to do an order to show cause to vacate the temporary guardian from the time the temporary guardian was appointed to the time he was released as my attorney. If defendant Morgan was truly acting in my best interests, why did he fail or attempt to vacate the temporary guardian?.
61. Defendant Morgan refused to do discovery for documents, like my sister's passport. These documents would prove that defendant Goldie Shabtai has travelled extensively throughout the world and her lawyer defendant Strauss duped the court into believing that she came to New York for only two weeks to testify when she was here in New York for a full year.
62. Defendant Goldie Shabtai and her attorney defendant Peter Strauss swore under oath and submitted a fictitious document alleging that my father gave my sister the Holon property when there is a will giving me this property. Defendant Morgan refused to show me the fictitious document that claims that my father gave my sister the Holon property.
63. After my father's death, my mother's mental health declined and she became violent. Defendant Morgan refused to do a mental health warrant on my mother and ignored my pleas that my mother was violent. On February 15, 2020, I sent defendant Morgan a video tape of my

mother threatening the upstairs tenant with a knife for non-payment of rent. Defendant Morgan refused to do a mental health warrant on my mother.
64. Defendant Morgan refused to believe that my sister, defendant Goldie Shabtai, was harassing my mother and provoking my mother to attack me. I had to call the police four times because of my mother's violence against me before she was committed to Brookdale Hospital and later committed to a rehabilitation center.
65. I have a text message from my niece dated June 10, 2018, requesting Israeli identification in order to rent the Holon property. If the property is hers, why would my niece need my mother's Israeli identification card to rent the apartment?
66. I have asked the court to do discovery and get documents from defendant Strauss, my sister's attorney, for the fictitious company my sister claims she works at, however, Judge Ottley ignored everything.
67. On June 25, August 12, and August 13, 2020, defendant Goldie Shabtai, along with New York Guardianship Services, contacted the 63rd precinct in order in to have me committed to a mental hospital. This was done to support the claim that I am incompetent so the court will not give me the guardianship.
68. On August 5, 2020, the upstairs tenants, Alissa Raineri and her husband Jose Lewis Valdez, broke the door and vandalized the framing of the door. They also broke a window which I had to fix. I made a police report.
69. Defendant NYGS, or the temporary guardian, did not fix anything or pay anything in the property. I paid for everything. In fact, the temporary guardian took the side of the upstairs tenants and used them against me allowing them to do what they want and not pay their rent.
70. The upstairs tenants have left voluntarily on September 9, 2020 and are still receiving mail at this address even though they have moved to a new house which they own.
71. On August 12, 2020, when the 63rd precinct came with four police cars in order to have me committed, Edward McGrath was a witness to all this . I was in the middle of my work and speaking to my managers when the police knocked on the door.
72. Defendant NYGS, defendant Silbert and defendant David Blau have reported to my sister about my mother's medical conditions however removed me from the contact list in the rehab center.
73. Defendant NYGS refused to have the upstairs tenants evicted even though they own their own house and defendant Buls accused me of illegally evicting them when they left voluntarily.
74. Seven times within six years, the upstairs tenants flooded the toilets and reduced their rent for the water damage that they themselves caused. The upstairs tenants made unilateral decisions on the property believing it will be their property in the future. For example, they purchased two air conditioners in 2014 and purchased a third air conditioner in August 2020 and took money off the rent. They took the air conditioners with them when they moved.
75. Every time my mother asked for the rent, the upstairs tenant said that she should be institutionalized. While she was in the rehab center, she told me that the upstairs tenants was damaging the property to attempt to purchase it at a lower price.
76. The upstairs tenants claimed they could not pay rent even though she is a real estate agent and he is a stockbroker; however they claimed they had $600,000 in cash to buy the property.
77. After the upstairs tenants received notice that there is a temporary guardian on the property and they need to pay rent to defendant NYGS, they began to step up their aggression against me. I had to fix their air conditioner twice, their broken faucet, the sewer, repaired the ceiling due to water bubble in the ceiling, and bring the exterminator twice due to alleged "bug infestation."
78. On June 23, 2020, I was informed that the upstairs tenants had a broken faucet in the kitchen. The next day I brought a plumber to fix the faucet. On July 5, 2020 (12 days after I fixed her

faucet and after I finished painting my mother's apartment), water was leaking from the upstairs apartment to the ceiling below causing bubbles all over the ceilings.

79. On July 20, 2020, I called the fire department because water was running from the upstairs apartment, to my mother's apartment right beneath it. On August 5, 2020, defendant NYGS pretentiously sent Linda Russo and another female to take pictures of the mold and water damage that the upstairs tenants caused. Instead of taking the pictures, they walked out of the apartment 5 minutes later claiming that she is allergic to cats and there is no damage.
80. Defendant NYGS refused to sue the upstairs tenants for back rent and damages that they caused to the property. I have sent three dozen emails of 80 pictures of the water damage and mold caused by the upstairs tenants to the above defendants and Judge Ottley only to be ignored with the insinuation that I am "crazy" for sending them such emails.
81. On December 3, 2020, I was verbally attacked by my sister, defendant Goldie Shabtai and her daughter with the phrase, "wishing me dead." Such verbal attacks have been going on since July 2019 when my sister first appeared in New York.
82. My sister and her children called me at 4:00 am in the morning and woke me up from a deep sleep knowing that I have a job to go to the next morning.
83. My sister, defendant Goldie Shabtai, has recruited the neighbor next door, the Cassanova, to harass me daily since July 2019. The Cassanova mother stated, "I will make money out of your house" and the daughter stated, "I will buy a new SUV out of your house." Upon information and belief, my sister recruited them to harass me and promised them money from the sale of the property.
84. I would hear the father, Mark Cassanova, speaking against me to whoever came up my stairs saying that I am "crazy" "mentally ill", "fuckface." The Cassanovas began to curse me and call me an "ugly f—k bitch" and "crazy bitch," when I had nothing to do with them and never provoked them.
85. He told my downstairs tenant Edward McGrath "who's side are you on? Do you have the diamonds up your ass"? How does Mark Cassanova know about the diamonds if defendant Goldies shabtai did not tell him?
86. Upon information and belief, Mark Cassanova spoke against me to the handymen that came to work for me. Because of the slanderous remarks made against me, two handymen left in the middle of the job. One handyman said that he does not want to get involved with the neighbors next door. Due to death threats, harassments, and disappearance of my checkbooks I had to install security cameras.
87. Defendant Buls, defendant Daniel Miller, Defendant Ken Barocas, defendant Peter Strauss claimed that my mother was incompetent. However, Kings County Hospital released her three times within 24 hours from the psychiatric ward on the grounds that she is not a risk to herself and others and is competent.
88. Defendant Russell Morgan, my ex-attorney, refused to do a mental health warrant to put a hold on her at the psychiatric hospital. However, the defendants made an order to show cause claiming that my mother was incompetent when she went to her safe deposit boxes in January 2020.
89. I sent dozens of emails to Judge Ottley informing her that defendant NYGS (temporary guardian) is not doing his job. I told her that he is not paying any bills and is allowing the upstairs tenants to damage the property. Whatever I emailed her was ignored. I also carbon copied the emails to Judge Knipel. I informed the two judges that defendant NYGS was harassing me by telling the police that I am an emotionally disturbed person on June 25, August 12 and August 13, 2020.
90. Judge Ottley allowed defendant NYGS and defendant Mordechai Buls to overextend their jurisdiction to get control of my parent's properties overseas.

91. On June 29, 2020, the plumber and other professionals attempted to testify that the upstairs tenants are intentionally ruining the property, however, the judge Ottley refused to hear it.
92. On September 9, 2020, Judge Ottley stated "take that smile off your face" and proceeded to yell at me for three hours straight while flirting with David Blau, executive director of the New York Guardianship. She screamed at me for having my cell phone on when my cell phone was off. David Roemer tried calling me however my phone was phone was off. And when he knocked on the door, I was not able to answer it because I was in a zoom meeting with the judge. David Roemer called the police because I was not able to answer my phone or door. And Edward McGrath was a witness to this event.
93. On October 14, 2020, Judge Ottley herself called me on my cell asking about the safe deposit boxes and she informed the defendants to contact the Brooklyn D.A. On that day, Judge Ottley stated that she contacted Judge Thompson, the Surrogate court judge and made case notes against me even though I was never in front of that Judge Thompson.
94. On October 27, 2020, I was supposed to vacate the temporary guardian however the court send me a wrong link and I was not able to log into the zoom meeting and the judge denied the motion. On November 3, 2020, I send a new notion of motion to vacate the temporary guardian however judge Ottley denied the motion. Judge Ottley has denied 13 order to show cause to vacate the temporary guardian and request from the defendants for discovery of documents.
95. On January 13, 2021, I made a notice of motion to recuse Judge Ottley and for non payment of the guardian and attorneys involved due to negligence and embezzlement. Judge Miriam Cyrulnik granted that motion and the court recused themselves in this matter. The court agreed with me that they errored in this matter and the guardian should never have been appointed in the first place.

## COUNT I- CIVIL RIGHTS VIOLATION

96. On the first count of the civil rights violation all the above defendants conspired and fabricated a story of incompetency and mental illness and violent acts that I beat my mother none of which are true. My sister's main goal and her conspirators were to gain control of parent's estate. Their actions resulted in my mother's death.

## COUNT II MALPRACTICE

97. On the second count of malpractice, defendant Russell Morgan and defendant Ken Barocas failed to do their job. Defendant Morgan did not oppose any motions nor did he submit any of his own. Defendant Barocas did not act in my mother's best interest. She repeatedly stated that she wanted me, Devora Shabtai to take her home and since I was removed from the list I never knew this. Relatives have informed me that she asked for me by name.

## COUNT III-INENTIONAL INFLICTION OF EMOTIONAL DISTRESS

98. On count three defendant Goldie Shabtai has recruited all the above defendants, the neighbors next door the Cassanovas, the previous tenants, Alissa Raineri and Jose Valdez to viciously and constantly harass me through verbal assaults, allegations of mental instability, and suspicious actions and events.
99. Due to the fact that I was removed from my mother's contact list, I did not know of her mental or medical condition or her wishes to come home to me. Their actions resulted in my mother's death which has caused me severe emotional distress.
100. My sister's and her daughter's actions, phone calls in the middle of the night, insults, death threats, death wishes has caused me emotional distress.

101.	My sister has used a previous court case from twenty years ago that I am incompetent of my custody battle of my children that has caused severe emotional distress to relive this.

## COUNT FOUR OF DEFAMATION AND SLANDER

102.	On Count four of defamation and slander, defendant Goldie Shabtai, and the above defendants have defamed me to the next- door neighbor, the previous upstairs tenants and various family members.

103.	The next door the Cassanovas and the previous tenants started a campaign of harassment and insults. The Cassanovas installed a security camera pointing to my front door to record all my activities.

104.	All the above defendants have slandered me to the court to the point that all my 13 motions to remove the guardians, my emails and letters were disregarded.

105.	From January 26, 2021 to February 23, 2021, my sister informed various family members that on my arrival to Israel that I should not be trusted or made to feel welcome. Defendant Goldie Shabtai poisoned my family by making false accusations including that I beat my mother and father and later claimed I beat my aunt and uncle. Approximately, seven years ago, she contacted my uncle Eliezer Shabtai making false claims that I beat my mother and father and there is affidavit from my uncle.

## COUNT FIVE OF FRAUD

106.	Defendant Russell Morgan claimed that there was a hearing on March 17, 2020 dealing with the motion to appoint a guardianship in front of Judge Knipel when no hearing was held. And he fraudulently charged me for it.

107.	Defendant Russell Morgan, defendant Goldie Shabtai and her attorney defendant Peter Strauss conspired that defendant Goldie Shabtai to testify out of turn alleging that her job is at "risk" and she needs to return to Israel on February 18, 2020 when she did not return to Israel and she has no job with Go-Be marketing.

108.	Defendant Russell Morgan viciously and fraudulently never put me on the witness stand. I never testified on behalf of my mother.

109.	Defendant NYGS and defendant Jeremy Silbert lied to me that the court had a hearing about my mother's burial but there is no record of it. I paid the entire burial bill of $19,000.

110.	On October 14, 2020, all the above defendants claimed that I stole the safe deposit boxes of my parents and made a motion on it that Judge Ottley herself called me on my cell phone. However, the rehab center claimed that defendant Goldie shabtai took the black bag from my mother that had the contents of the safe deposit boxes.

111.	The Tel Aviv apartment which was willed to me and which my parents intended to live in was rented by my sister a month after my father left Israel. I discovered this when I went to Israel.

112.	Defendant Strauss is attempting to place a lien of $51,790.50 on the property which is illegal and fraudulent because it was willed to me. The whole bill sounds fraudulent because my ex-lawyer defendant Russell Morgan did not object to any guardian and a guardian was placed against my will.

113.	Defendant Strauss bill of $51,790.50 should be paid by my sister, defendant Goldie Shabtai but he alleges that it should be paid by the estate of my parents. I doubt that defendant Strauss worked for a full year for free and was not compensated by my sister. This attorney charges $600 an hour. Defendant Strauss claimed that he needed four associates to assist him with the guardianship case when my ex-lawyer defendant Russell Morgan did not object to any guardian.

114. The whole guardianship proceeding was fraudulent. The above defendants intended to override the will for nefarious reasons of taking my parents estate.

### COUNT SIX OF NEGLIGENCE

115. On the count six of negligence, due to their actions of not monitoring her situation, her health deteriorated and the results were death due to actions or lack of actions.
116. Their actions were to remove me from the contact list of the rehab center and I was not notified of any changes in her conditions. My mother herself gave me Lillian Zhang's number, a social worker at the rehab center and I called the number several times however I never received a call because I was not on the list.
117. The plan was to bring my mother home to be with me. Those were her wishes. Since I was not on the contact list, I could not speak to anybody. Her request was not granted.
118. The above defendants that were appointed by the court to care and protect my mother failed to do so.

### COUNT SEVEN OF WRONGFUL DEATH

119. On Count seven of wrongful death, by their actions of removing me from the list and not having any say of my mother's treatment or being informed of her conditions, their acts led directly to her death.
120. In October 2020 and in November 2020, I was making plans to bring her home because I did not know that she was in a dire condition. Nobody notified me of her drastic change in her condition which led to her death.

In summation, my sister's and all the above defendants through their actions have made this a living hell by removing me from my mother's contact list and my mother's medical and mental changes. Because of this, I did not know of her wishes to come home with me resulting in her unfortunate death. My mother was totally dependent upon me and therefore there was no reason for a guardian. My sister's main goal was to get control of my parent's estate by any means possible by removing me from the contact list in the rehab center and by making false claims and accusations.

Devora Shabtai
April 14, 2021

Devora Shabtai
2118 East 69th Street
Brooklyn, New York 11234
(718) 954-4973

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Devora Shabtai                                                                                    20CV 10868
      Plaintiff

  -against-

Goldie Shabtai, New York Guardianship Services, David Blau,
Jeremy Silbert, Mordechai Buls, Peter Strauss, Ken Barocas,
Morgan Russell, Daniel Miller
      Defendants
-----------------------------------------------------------------------

## AFFIDAVIT OF SERVICE

I, Edward McGrath, the undersigned being duly sworn, depose and say: I am not a party to this action, am over 18 years of age and reside in New York. On April 14, 2021, I served a true and correct copy of the amended complaint through United States Postal service upon the following parties:

Jeffrey, Scott Peske
Voute, Lohrfink, Magro and Collins
170 Hamilton Avenue
White Plains, New York 10601
(Attorney for Mordechai Buls)

Erin A. O'Leary, Esq
Lewis Brisbois
77 Water Street, Suite 2100
New York, NY 10005
(Attorney for Ken Barocas)

Jeffrey Yehuda Aria Spiegel
Lewis Brisbois Bisgaard and Smith
77 Water Street, Suite 2100
New York, NY 10005 (attorney for NYGS)

Bret A. Scher and Adam Nicolazzo (attorney for Peter Strauss)
Kaufman, Dolowich and Voluck, LLP
135 Crossway Park Drive, Suite 201
Woodbury, New York 11797

Nicole Feder (Attorney for Russell Morgan)
L'Abbate, Baltran, Colavita and Contini
3 Huntington Qualdrangle, Suite 102-S
Melville, New York 11747

Daniel Miller, Esq. Pro Se
365 Bridge Street #7PRO
Brooklyn, New York 11201

Goldie Shabtai Pro Se
Yochanan Beder 6/59
Ramat Gan, Israel

This 14th day of April 2020

_____
Edward McGrath

State of NY, County of NY
Sworn To Before Me This Day Of
APR 14 2021

_____
Signature of Notary

Jenice Hernandez
Notary Public, State of New York
No. 01HE6359254
Qualified in Bronx County
Certified in New York & Kings County
Commission Expires May 22, 2021
The UPS Store | 82 Nassau St | 212.406.9010